Commonwealth *v.* Johnson, Appellant.

Submitted December 12, 1969. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

246

*Don M. Larrabee, II,* for appellant.

*Allen E. Ertel,* District Attorney, for Commonwealth, appellee.

OPINION PER CURIAM, March 19, 1970:
The six Judges who heard this appeal being equally divided, the judgment of sentence is affirmed.

---

DISSENTING OPINION BY SPAULDING, J.:
I respectfully dissent from affirmance of the judgment of the court below.

Lee Port Johnson, appellant, appeals from the order of the Criminal Division of the Court of Common Pleas of Lycoming County, of June 13, 1969, denying his motion for a new trial after conviction for burglary and larceny, and from judgment of sentence following that order on July 24, 1969. He contends that the court erred in permitting the Commonwealth's chief witness to testify that he (the witness) had changed his story of the crime after taking a lie detector test.

The witness, Robert Miles, testified on direct examination that he and appellant had committed the burglary together. Three fellow prisoners of Miles' then testified for the defense that when Miles first discussed the case with them, he said he had committed the burglary alone; but that a week or so later, after he had spent considerable time with the police, his story was

changed to include the appellant. The three witnesses also stated that Miles talked about "getting back" at appellant for "ratting" on him, and appeared to be receiving special treatment from the police. (Miles had pleaded guilty to the crimes charged, and was awaiting sentence at the time of appellant's trial.) Appellant denied participating in the crimes. In rebuttal, Miles was permitted to refer to the lie detector test, on the grounds that the reference was necessary to rehabilitate his credibility.[1]

Reference to the lie detector test should not have been permitted, because it unavoidably raised an inadmissible inference of the test result.[2] See *Commonwealth ex rel. Hunter v. Banmiller,* 194 Pa. Superior Ct. 448, 450-51, 169 A. 2d 347, 348 (1961); *Commonwealth v. Saunders,* 386 Pa. 149, 156-57, 125 A. 2d 442, 445-46 (1956), citing *Commonwealth ex rel. Riccio v. Dilworth,* 179 Pa. Superior Ct. 64, 67-68, 115 A. 2d 865, 866-67 (1955). The jury, confronted with the fact that the witness had taken the test and changed his story, and the fact that the testimony presented by the Commonwealth consisted of the post-test story, was practically compelled to infer that the test had discredited the previous story.

---

[1] Permission to bring out the reference was granted at sidebar conference, over defense counsel's objection, with the provision that the result of the test not be discussed.

[2] The pertinent rebuttal testimony proceeded as follows: "Q. Did you ever make those [the alleged original] statements? A. Yes, I made the statements up until I was taken to the . . . Police Department. Q. Now somewhere along the line you changed your story, is that correct? A. Yes, sir. Q. Where were you when you first changed your story? A. I was at the Mayor's office . . . sitting with the police. Q. And what was the occasion for your being in his office? A. I was given a lie detector test. Q. You were given a lie detector test? A. Yes, sir, I was. Q. After you were given a lie detector test, did you change your story? A. Yes, sir. They gave me three of them. [Objection sustained]."

In *Commonwealth ex rel. Hunter v. Banmiller,* supra, where it was alleged that the result of a lie detector test had been considered by the court below, we stated: "Had such test or the results thereof been admitted in evidence, such admission, on appeal, would have constituted reversible error." (at 451.)

Elsewhere, Pennsylvania courts have considered lie detector tests in relation to the willingness or refusal of the accused to take them. In *Commonwealth ex rel. Riccio v. Dilworth,* supra, after reviewing the status of the tests, this Court concluded that because they were not reliable, their results could not be admitted. For the same reason, it was held that the accused's statement of willingness to take the test was inadmissible, since it raised an unwarranted inference of innocence. That reasoning was followed in *Commonwealth v. Saunders,* supra, and *Commonwealth v. McKinley,* 181 Pa. Superior Ct. 610, 618, 123 A. 2d 735, 739 (1956). In *DeVito v. Civil Service,* 404 Pa. 354, 172 A. 2d 161 (1961), refusal to take a lie detector test was similarly held not to be "just cause" for dismissal.

The unreliability of the test affects the instant case much more directly than the above cases. The reference here went much further than showing state of mind as to guilt or innocence in relation to a hypothetical test; it raised the inference that an actual test certified the truth of testimony implicating the accused. The inference carried the weight of scientific evidence while in fact that evidence was unreliable. The same considerations that require excluding express discussion of the test result require excluding the instant reference.

In my view, the court could not cure the prejudicial inference by charging the jury to limit its considerations strictly to the fact that the test had been administered. The result of the test was in effect admitted into evidence nonetheless, and that was reversi-

ble error. *Commonwealth ex rel. Hunter v. Banmiller,* supra.

' The Commonwealth claims that the rule of evidence permitting the admission of prior consonant statements for rehabilitation supports the reference to the lie detector test, citing *Commonwealth v. Marino,* 213 Pa. Superior Ct. 88, 102, 245 A. 2d 868, 874-75 (1968), and *Commonwealth v. Brown,* 23 Pa. Superior Ct. 470, 503-07 (1903). But those decisions merely state an exception to the rule that prior consonant statements cannot be admitted. They do not say that the need for rehabilitation permits violation of any other exclusionary rule of evidence. In particular, they do not deal with admissibility of the circumstances under which the statements were made, which is at issue here. Further, as pointed out in the *Marino* decision, the statements may be offered to rehabilitate the witness's credibility, but "not as evidence of the facts stated by the witness." (at 102.) The effect of the reference to the lie detector test in this case cannot be limited to dispelling the inference of impure motives. It incurably bolsters the witness's testimony, as evidence of the facts he stated.

I would reverse the judgment of the court below and grant a new trial.

MONTGOMERY and HOFFMAN, JJ., join in this dissenting opinion.